**I.T.A.D. ASSOCIATES, INC., Appellee,**

v.

**PODAR BROTHERS, Appellant.**

No. 80–1432.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 1, 1980.
Decided Jan. 9, 1981.

A. Hoyt Rowell, III, Charleston, S. C. (Gibbs, Gaillard, Rowell & Tanenbaum, Charleston, S. C., on brief), for appellant.

Gordon D. Schreck, Charleston, S. C. (Buist, Moore, Smythe & McGee, Charleston, S. C., on brief), for appellee.

Before FIELD, Senior Circuit Judge, and HALL and MURNAGHAN, Circuit Judges.

K. K. HALL, Circuit Judge:

Podar Brothers (Podar) appeals an order of the district court denying its motion to compel arbitration. The court ruled that Podar and I.T.A.D. Associates, Inc. (I.T.A.D.) had contractually agreed to arbitrate their differences, but that Podar's actions and conduct had waived that agreement. We reverse and remand for further proceedings consistent with this opinion.

This case arises under Chapter 2 of the United States Arbitration Act (Act), which implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Convention), 9 U.S.C. § 201 et seq. Podar is a foreign partnership with its primary place of business in Bombay, India. I.T.A.D. is organized under the laws of the State of New York and maintains its primary place of business in New York City. Both India and the United States are signatories of the Convention.

Podar and I.T.A.D. are engaged in the marketing of textile products. In December, 1975, and January, 1976, I.T.A.D. agreed to purchase textiles from Podar. In each instance, the purchase orders submitted by I.T.A.D. and the contracts issued by Podar specified that all disputes arising between the parties would be submitted to arbitration. However, the I.T.A.D. purchase order specified New York City as the situs for arbitration while the Podar contracts specified Bombay. In any event, the Government of India thereafter imposed certain quotas which allegedly prevented Podar from fulfilling its contractual obligation to supply textiles. As a consequence, I.T.A.D. alleged that it was forced to default on certain obligations to its customers, thereby sustaining damages.

On July 20, 1976, I.T.A.D. filed a complaint in the Court of Common Pleas for Charleston County, South Carolina, alleging that Podar had breached the contracts. On the same day, I.T.A.D. obtained an attachment of a shipment of Podar textiles which was passing through the Port of Charleston en route to another customer. On September 4, 1976, Podar filed a pro se reply affidavit challenging the action as premature due to the agreements to arbitrate and asserting other defenses. Thereafter, Podar retained counsel and the case was placed on the non-jury calendar to await trial.

Several trial dates were set but were continued due to motions and the inability of the Podar brothers to be present. In June, 1978, Podar posted a $50,000 bond to obtain the release of the attached textile shipment. The case was eventually set for trial on September 12, 1979. However, on the day prior to trial Podar obtained a removal of the action to federal district court pursuant to 9 U.S.C. § 205.[1]

On January 2, 1980, Podar filed a motion to compel arbitration pursuant to Chapter 2 of the Act. The district court denied the motion, finding that the parties had contractually agreed to arbitrate, but that Podar through its actions and conduct had waived its right to compel arbitration. The court observed that the doctrine of waiver was well established prior to the Convention and that nothing in Chapter 2 abrogat-

---

1. Section 205 provides, in pertinent part:

    Where the subject matter of an action or proceeding pending in a State court to an arbitration agreement or award falling under the Convention, the defendant or the defend-

    ants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

ed the concept. The judge further cited Section 206[2] of the Act as vesting in the court a certain degree of discretion in compelling arbitration.

Our review of the language and purposes of the Convention and Chapter 2 of the Act leads us to conclude that the district court erred in refusing to order arbitration. We begin with the fact that the parties agreed in writing that all disputes arising from their contractual relationship would be submitted to arbitration. Such an agreement falls squarely within Article II(1) and (2) of the Convention. Article II(3) provides:

The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

This language clearly mandates the referral of the Podar I.T.A.D. dispute to arbitration unless one of the enumerated exceptions is applicable.

In applying the language "null and void, inoperative or incapable of being performed," we are mindful of the policy considerations which underlie the Convention. As the Supreme Court has noted:

The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

*Scherk v. Alberto-Culver Company,* 417 U.S. 506, 517 n.10, 94 S.Ct. 2449, 2456 n.10, 41 L.Ed.2d 270 (1974). Thus, our interpretation of the Article II(3) proviso must not only observe the strong policy favoring arbitration, but must also foster the adoption of standards which can be uniformly applied on an international scale.

Against this backdrop, we conclude that Article II(3) contemplates the possibility of waiver of the arbitration agreement by the one or both of the parties, but that the facts of this case do not demonstrate such a waiver. Podar raised the issue of arbitration in its initial pleading and never retreated from that position. At best the facts reveal only a passage of time between the institution of the action and Podar's motion to compel with no prejudice to I.T.A.D.[3]

Additionally, we find that 9 U.S.C. § 206 does not, as the district court believed, confer discretion in compelling arbitration. The discretion vested by Section 206 relates only to the designation of a place for arbitration and the appointment of arbitrators. Therefore, the order of the district court denying arbitration must be reversed.

In light of our reversal, the record discloses two problems requiring further action by the district court. First, the purchase orders and contracts submitted by the parties are in conflict regarding the place of arbitration; this conflict is remanded to the district court for resolution. Second, the attachment obtained by I.T.A.D. and the superseding bond posted by Podar are contrary to the parties' agreement to arbitrate and the Convention; therefore, the bond must be released and refunded to Podar. *McCreary Tire & Rubber Co. v. CEAT,* 501 F.2d 1032, 1038 (3rd Cir. 1974).

Accordingly, the judgment of the district court is reversed and the case remanded for further action as directed herein.

*REVERSED AND REMANDED.*

2. Section 206 provides:

A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement.

3. For a discussion of circumstances which indicate a waiver of an arbitration agreement, see *City of Parkersburg v. Turner Construction Co.,* 612 F.2d 155 (4th Cir. 1980), and cases cited therein.